UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
JENNIFER HEWITT,

                        Plaintiff,

           - against –

THE CITY OF NEW YORK, DETECTIVE
JENNIFER CHILDS (Shield # 2022), DETECTIVE
CHRISTOPHER COOKE (Shield # 1569),
UNDERCOVER OFFICER No. 0055, UNDERCOVER
OFFICER No. 0054, and DETECTIVE VINCENT
DAUGE (Shield # 30121),

                     Defendants.
------------------------------------------------------------------ x

**MEMORANDUM &
ORDER**

09 CV 214 (RJD) (MDG)

DEARIE, District Judge.

      Plaintiff brings claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against the
City of New York and members of the New York City Police Department ("NYPD") for
her arrest and prosecution following a large scale, multi-year investigation into a
Brooklyn narcotics distribution network. Plaintiff claims that defendants falsified
evidence, including her identification. Apparent inconsistencies and minor discrepancies,
however, do not meaningfully diminish the strength of the evidence available to the
defendant officers at the time of plaintiff's arrest and prosecution. Because plaintiff has
failed to show that defendants did anything more than possibly misidentify her,
defendants' motion for summary judgment is granted.

# I. BACKGROUND[1]

## A. Drug Investigation

"[I]n or around September 2005," the Brooklyn North Narcotics division of the NYPD commenced an 18-month, large-scale investigation into a "narcotics distribution network in the area of the Cypress Hills Housing Development in Brooklyn, NY." Def. R. 56.1 ¶¶ 1-2.    During the investigation, "undercover officers and confidential informants purchased narcotics from a vast network of individuals, including juveniles." Id. ¶ 2. Detective Christopher Cooke ("Cooke") was the "lead case detective," Detective Vincent Dauge ("Dauge") was the "alternate case detective," and Undercover Officers 55 ('UC-55") and 54 ("UC-54") were undercover officers assigned to the investigation. Id. ¶¶ 3-5. The investigation ultimately led to the arrests of "approximately 50-60" and the indictment of thirty-seven individuals, including plaintiff. ECF Docket # 85, Pl. Exh. 12, Cooke Deposition ("Dep.") at 44; ECF Docket # 78, Def. Exh. J. at 1-2.

## B. Undercover Transactions with Plaintiff's Brother, Carl Hewitt and Unidentified Female

During the investigation, UC-55 made contact with suspected drug dealer, Carl Hewitt ("Mr. Hewitt"), who is plaintiff's brother, on two occasions relevant to the instant action: April 6, 2006 and April 20, 2006.

---

[1] The following factual backdrop is largely adapted from the parties' Local Civil Rule 56.1 statements. A significant portion of plaintiff's responses in her Rule 56.1(b) Statement ("Pl. R. 56.1") to defendants' Rule 56.1(a) Statement ("Def. R. 56.1"), are unresponsive and merely recite, verbatim, inconsistencies in defendants' investigation, which the Court will address, infra Part II.A. The Court "deem[s] admitted" defendants' Statement to the extent that plaintiff failed to "specifically controvert[]" any of defendants' "correspondingly numbered paragraph[s]." See Local Civil Rule 56.1(c).

1. April 6, 2006 Transaction[2]

On April 6, 2006, UC-55 met Mr. Hewitt, who arrived on the corner of Pennsylvania and Fulton Avenues in Brooklyn, New York driving a red Nissan Altima with a female passenger. Def. R. 56.1 ¶¶ 6-8. UC-55 and Mr. Hewitt "had a deal for five eight balls," or five-eighths of an ounce of crack. Pl. Exh. 15, UC-55 Dep. at 22-23. After UC-55 indicated his interest in purchasing, Mr. Hewitt asked the female passenger to hand him an object and the female passenger retrieved a black plastic bag from under her seat and handed it to Mr. Hewitt. Def. R. 56.1 ¶ 10. Mr. Hewitt then retrieved five eight-balls of what later was determined to be crack cocaine from the bag, and handed them to UC-55. Id. ¶ 11. "Because the Field Team was conducting another operation, and . . . were not prepared for the buy," UC-55 Dep. at 24, UC-55 created a ruse: he explained to Mr. Hewitt that he did not have the money to purchase the narcotics at that time, Def. R. 56.1 ¶ 12. Mr. Hewitt informed UC-55 that he could still purchase the crack from a third party later that day, which he did. Id.; Pl. Exh. 25, 4/6/06 Buy Report.

Following the April 6, 2006 operation, UC-55 orally reported his observations to Cooke, including the fact that Mr. Hewitt was with a female at the time of the transaction, UC-55 Dep. at 47-49; Cooke Dep. at 29-30; see Pl. R. 56.1 ¶ 13. He also prepared a buy report summarizing the transaction. The buy report did not include the facts that a female was present or that Mr. Hewitt was in a car. See 4/6/06 Buy Report.

---

[2] Plaintiff's Rule 56.1 Statement is largely unresponsive regarding the April 6, 2006 transaction. The principal dispute seems to be over whether plaintiff was actually in the car or involved at all. Plaintiff, for her part, testified at her deposition that she never owned a car, never had a driver's license, never drove a car in which Mr. Hewitt was a passenger, and never was a passenger in a car that was driven by Mr. Hewitt. Pl. Exh. 23, Pl. Dep. at 57. Reading the evidence in the light most favorable to plaintiff, the Court will assume, without deciding, that plaintiff was not actually present during this transaction.

2. April 20, 2006 Transaction[3]

Two weeks later, UC-55 arranged another buy with Mr. Hewitt. UC-55 again met Mr. Hewitt on a street corner in the same red Nissan Altima. Def. R. 56.1 ¶¶ 15-16. This time, however, Mr. Hewitt was in the passenger seat and the same unidentified female was driving. Id. ¶ 16. UC-55 stepped into the backseat of the vehicle on the passenger side and handed Mr. Hewitt $1000. Id. ¶¶ 16-17; Pl. Exh. 28, 4/20/06 Buy Report. Mr. Hewitt again asked the female "to get something" and the female reached "under her seat" and placed a "small bag, small shopping style bag" into Mr. Hewitt's hand. UC-55 Dep. at 60; see Def. R. 56.1 ¶ 18. Mr. Hewitt then handed UC-55 "the product," which was a "white rocky substance." UC-55 Dep. at 61; 4/20/06 Buy Report. UC-55 field tested the "white rocky substance," and the results were negative for cocaine. Def. R. 56.1 ¶ 20; see Pl. Exhs. 30-32, Field Test Results. After observing the same female twice under like circumstances, the female was then given the codename "J.D. Altima." Def. R. 56.1 ¶ 9.

During this transaction, UC-54 observed the transaction from nearby. Def. R. 56.1 ¶ 21. UC-54 was "not more than 25 feet away" and corroborated UC-55's report in all material respects, including the type of car driven and the presence of the female in the driver's seat. Pl. Exh. 29, UC-54 Observation Notes; Pl. Exh. 17, UC-54 Dep. at 13-14. UC-54 also submitted a "Complaint Follow-Up Information," which recorded these same observations. Pl. Exh. 29

C. Identification of Plaintiff

Between April 2006 and September 2006, Cooke and his team attempted to identify the female and learned that Mr. Hewitt had a sister, who "fit the description that

---

[3] See supra, note 2.

the Undercover Officer described."[4] Cooke Dep. at 54; see Def. R. 56.1 ¶ 54. On September 13, 2006, Cooke presented UC-55 with a photo array that included plaintiff's photo. After viewing the photo array, UC-55 identified plaintiff as "J.D. Altima."[5] Def. R. 56.1 ¶¶ 24-25; see Pl. Exhs. 33-34.

D. NYPD interaction with Kings County District Attorney's Office ("KCDA")

During the course of the investigation, Cooke and Dauge met with Assistant District Attorney, Gloria Rios ("Rios"), and provided her with information "as far as what involvement, what actions, what any particular person did as far as the investigation is concerned," Pl. Exh. 22, Rios Dep. at 16; Def. R. 56.1 ¶ 28, and provided her with the buy reports and other investigative reports, Rios Dep. at 14.

E. Plaintiff's Arrest[6]

On April 25, 2007, plaintiff and Mr. Hewitt were arrested in front of their house, as part of a mass arrest of suspects involved in the investigation. Def. R. 56.1 ¶ 29. Plaintiff was then taken to the 77th Precinct where she was "stripped searched" and then held for "two and a half days." Pl. Dep. at 41-42. The day after arrest, plaintiff was "put .

---

[4] Plaintiff disputes that the description UC-55 provided fits plaintiff. The Court addresses the effect of this purported inconsistency, infra Part II.A.

[5] Defendants claim that UC-55 made an additional confirmatory identification of plaintiff on April 19, 2007—just days before her arrest—when "Cooke along with two other officers conducted a stop of plaintiff and Carl Hewitt." Def. R. 56.1 ¶¶ 26-27; see Pl. Exh. 35. Plaintiff disputes that this identification ever took place, citing UC-55's deposition testimony that after the April 20, 2006 transaction, he "did not see [plaintiff] physically until she was arrested" on April 25, 2007. Pl. R. 56.1 ¶¶ 26-27. Moreover, when presented with Cooke's report of the disputed April 19, 2007 confirmatory identification, UC-55 responded that the report was "not clear . . . I would have to ask [Cooke]." See id. Reading the evidence in the light most favorable to plaintiff, the Court will assume, without deciding, that this second confirmatory identification never took place.

[6] There is a dispute as to who actually arrested plaintiff. Defendants contend that plaintiff was arrested "by law enforcement officers who are not a party to this suit." Def. R. 56.1 ¶ 29. Plaintiff contends that plaintiff was arrested by Detective Jennifer Childs ("Childs"). Pl. Dep. at 35; Pl. R. 56.1 ¶¶ 29, 31-32. Defendants counter that "[a]s a result of the numerous arrests that were made in connection with this investigation . . . Childs was assigned to be plaintiff's arresting officer even though she was not at the scene of plaintiff's arrest." Def. R. 56.1 ¶ 31. Reading the evidence in the light most favorable to plaintiff, the Court will assume, without deciding, that Childs did physically arrest plaintiff.

. . in an interrogation room," id. at 42, during which time "UC-55 again positively identified plaintiff as JD Altima," Def. R. 56.1 ¶ 30. Plaintiff was transported from the 77th Precinct to Central Booking, where she alleges she was again strip searched. Pl. Dep. at 43-44. Two and one-half days later, she was arraigned and remanded to Riker's Island after failing to post bail and was strip searched again. Id. at 45-46. In all, plaintiff remained at Riker's for approximately six months. Id. at 46.

F. Plaintiff's Prosecution

On April 27, 2007, Cooke signed a sworn criminal complaint, which charged plaintiff along with numerous other co-defendants with multiple drug and conspiracy related offenses. Pl. Exh. 2, Cooke Sworn Compl. at 1, 7.  On March 15, April 24, and April 27, 2007, UC-55 testified before the grand jury about plaintiff's involvement in the April 6, 2006 transaction. Pl. Exh. 5, 3/15/07, 4/24/07, & 4/27/07 Grand Jury Minutes ("Mins."). Plaintiff was indicted on two counts of conspiracy in the first degree and two counts of conspiracy in the second degree.  Def. R. 56.1 ¶ 33 (citing Def. Exh. H, Kings County Criminal Court Indictment No. 2366/07 ("First Indictment")).

On October 15, 2007, after review of the evidence presented to the grand jury, the Honorable Danny K. Chun of the New York State Supreme Court, Kings County, dismissed the charges of conspiracy in the first degree, but declined to dismiss or reduce the charges of conspiracy in the second degree. Id. ¶ 34 (citing Def. Exh. I, at 2, Chun 10/15/07 Order). Judge Chun "granted leave" to the KCDA "to represent the case to the grand jury." Chun 10/15/07 Order at 2. Accordingly, the KCDA re-presented evidence to a second grand jury, during which UC-55 testified concerning plaintiff's involvement in the April 20, 2006 transaction. Defs. R. 56.1 ¶¶ 35-36.

6

This second grand jury subsequently issued a superseding indictment, indicting plaintiff on four counts of conspiracy in the first degree, four counts of conspiracy in the second degree, and numerous other offenses related to the sale and possession of a controlled substance. Id. ¶ 37. On April 7, 2008, upon review of the evidence presented to the second grand jury, however, Judge Chun "dismissed the superseding indictment in its entirety as to plaintiff for lack of legally sufficient evidence." Id. ¶ 38 (citing Def. Exh. K, Chun 4/7/08 Order at 2).

Ultimately, Mr. Hewitt and up to thirty-five others were indicted by the same grand juries as plaintiff. On August 20, 2008, Mr. Hewitt pled guilty to Conspiracy in the Second Degree and Criminal Sale of a Controlled Substance in the Third Degree. Def. R. 56.1 ¶ 40; see Def. Exh. J, Indictment; Def. Exh. N, Carl Hewit Plea Allocution.

## II. DISCUSSION

Summary judgment "is warranted when, after construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact." Sledge v. Kooi, 564 F.3d 105, 108 (2d Cir. 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50, 255 (1986)). The party opposing summary judgment must set forth evidence demonstrating a genuine issue for trial, Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006), and may not rely only on allegations in its pleadings or mere "conclusory statements, conjecture, or speculation," Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996). Although a plaintiff is entitled "to have his testimony believed," at summary judgment, a plaintiff is only entitled "to have all *reasonable inferences* that can be drawn therefrom made in his

favor." Richardson v. City of New York, No. 02 CV 3651(JG), 2006 WL 2792768, at *3
(E.D.N.Y. Sept. 27, 2006) (Gleeson, J.) (emphasis added).

A. False Arrest

A Section 1983 claim for false arrest under the Fourth Amendment "is
substantially the same as a claim for false arrest under New York law." Weyant v. Okst,
101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted). False arrest requires that:
"'(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of
the confinement, (3) the plaintiff did not consent to the confinement and (4) the
confinement was not otherwise privileged.'" Singer v. Fulton Cnty. Sheriff, 63 F.3d 110,
118 (2d Cir. 1995) (quoting Broughton v. State, 37 N.Y.2d 451, 456 (N.Y. 1975)). Even
where a defendant did not "actually restrain[] or confine[] a plaintiff, a claim of false
arrest . . . may lie where a plaintiff can show that defendant instigated his arrest, thereby
making the police agents in accomplishing defendant's intent to confine the plaintiff."[7]
Chepilko v. City of New York, No. 06-CV-5491 (ARR)(LB), 2012 WL 398700, at *10
(E.D.N.Y. Feb. 6, 2012) (Ross, J.) (internal modifications and quotation marks omitted).
Probable cause "is a complete defense to an action for false arrest." Weyant, 101 F.3d at
852 (internal citations and quotation marks omitted).

As plaintiff conceded at oral argument, she cannot survive summary judgment
without raising a genuine fact issue as to whether UC-55 or others fabricated evidence
implicating her in the drug sales and conspiracy. Mere misidentifications do not
undermine probable cause; police officers are entitled to make reasonable mistakes when
identifying suspects. Colon v. City of New York, 60 N.Y.2d 78, 82 (N.Y. 1983). When

---

[7] UC-54's mere presence and observation as a "ghost" undercover during one of two transactions is
insufficient to meet the "intended to confine" element of plaintiff's false arrest claim.

8

assessing probable cause to arrest, police officers are likewise entitled to rely—as long as such reliance is reasonable—on information provided by other law enforcement officials, including identifications which may later turn out to be mistaken. Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010). Especially where, as here, there was a wide-ranging "investigation regarding a series of committed crimes," courts recognize the necessity of depending on collective knowledge. People v. Reynolds, 479 N.Y.S.2d 736, 739 (N.Y. App. Div. 1984).

At this stage of the litigation, plaintiff's unsupported assertions that she never rode in Mr. Hewitt's car or sold drugs cannot defeat summary judgment because defendant had probable cause to arrest her. See Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996) ("Probable cause exists when there are 'facts and circumstances sufficient to warrant a prudent man that the suspect had committed or was committing *an* offense.'") (quoting Gerstein v. Pugh, 420 U.S. 103, 111 (1975)) (internal modifications omitted) (emphasis added).

As part of an extensive and apparently quite successful investigation into a major drug conspiracy, UC-55 engaged suspected drug dealer, Mr. Hewitt. During two different drug buys in Mr. Hewitt's car, UC-55 saw a female—who the defendants subsequently codenamed "J.D. Altima"—hand Mr. Hewitt a bag of drugs, which Mr. Hewitt then handed to UC-55 in exchange for money. UC-54 substantially corroborated UC-55's account of the second transaction. UC-55 then later identified plaintiff as "J.D. Altima." Whether this identification was ultimately accurate is something only plaintiff knows, and firmly denies. For the purpose of summary judgment, the Court gives

9

plaintiff the benefit of the doubt. Nonetheless, defendants' probable cause to arrest plaintiff as "J.D. Altima," even if mistaken, defeats plaintiff's Fourth Amendment claim.

Plaintiff challenges UC-55's identification because it "took place five months after the last purported transaction that the defendants claim [she] had been involved in." Pl. R. 56.1 at ¶ 25. Although the circumstances concerning UC-55's delayed confirmatory identification may have affected the weight—if any—accorded to his identification at trial or at a pre-trial suppression hearing, the delay alone does not vitiate probable cause to arrest. See Celestin v. City of New York, 581 F. Supp. 2d 420, 431 (E.D.N.Y. 2008) (Glasser, J.) ("A positive photo identification by an eyewitness is normally sufficient to establish probable cause to arrest."); Whitson v. Gilberg, 792 F. Supp. 2d 639, 644 (E.D.N.Y. 2011) (Wexler, J.) (holding that "it was certainly reasonable for [arresting officer] to believe that probable cause existed at the time of the arrest" based upon fellow officer's "identification of [plaintiff], and [the fellow] officer's knowledge of the area."). Plaintiff does not allege that the photo array was unduly suggestive nor does she give any basis to question Cooke's testimony that the team identified plaintiff in good faith. Moreover, prior to plaintiff's arrest, Rios agreed with Cooke and Dauge's assessment of UC-55's investigation and plaintiff's involvement, supporting the decision to arrest plaintiff. See Martinez v. Simonetti, 202 F.3d 625, 636 (2d Cir. 2000) (finding officers' probable cause determination supported by District Attorney's "concurre[nce] with the propriety of bringing charges based on the evidence at hand.").

Plaintiff's argument that "the purported involvement of the female that the defendants have identified as the plaintiff . . . amounts to nothing more than merely being

10

present during said purported transactions," is baseless. Opp. Mem. at 14; see id. at 15. The actions of J.D. Altima went far beyond that of "mere association with those implicated in an unlawful undertaking." United States v. Nusraty, 867 F.2d 759, 764 (2d Cir. 1989); see People v. Reisman, 29 N.Y.2d 278, 285 (N.Y. 1971) ("[P]ossession suffices to permit the inference that the possessor knows what he possesses, especially, but not exclusively, if it is in his hands, on his person, in his vehicle, or on his premises."); People v. Green, 35 N.Y.2d 437, 442-43 (N.Y. 1974) ("[B]ecause of the nature of narcotics traffic and high monetary value attached to illicit drugs, ignorance of one's possession of narcotics or knowledge of their nature or value is highly unlikely.").

Additionally immaterial is the fact that the April 6, 2006 sale was not ultimately consummated in Mr. Hewitt's car, as well as the possibility that the female may never have received any compensation for her role. The term "sell" is defined in N.Y. Penal L. 220.00(1) (McKinney's 2009) as "to sell, exchange, give or dispose of to another, or to *offer or agree to do the same.*" Id. (emphasis added). Where, as here, there is "evidence of a bona fide offer to sell—i.e., that [the suspect] had both the intent and the ability to proceed with the sale," People v. Mike, 92 N.Y.2d 996, 998 (N.Y. 1998), a suspect "may be guilty as a seller even if he does not receive any consideration for the transfer of drugs to the buyer," People v. Starling, 85 N.Y.2d 509, 515 (N.Y. 1995).

Plaintiff points the Court to no evidence of ill will or malice on the part of UC-55, no arguable motivation to fabricate, or any other coherent theory for why an undercover involved in the investigation and arrests of *dozens* would lie about the existence, identity, and actions of *one.* Plaintiff's recitation of inconsistencies and inaccuracies in UC-55's

11

buy reports, grand jury testimony,[8] descriptions of the female suspect, and undercover audio recordings, do not support her argument that UC-55 fabricated evidence against her. Simply stating that something raises an inference does not make it so. Rather, "[t]he purported motivations grounded in animus and a clear disregard of duty attributed to [UC-55] constitute nothing more than unsubstantiated conjecture," insufficient to raise a *genuine* issue of material fact for trial. Celestin, 581 F. Supp. 2d at 432.

Plaintiff spends considerable effort to stress that UC-55's April 6, 2006 buy report mentioned no female. Relatedly, plaintiff points out UC-55's failure to discuss the presence of any female during the April 6, 2006 encounter when first testifying before the grand jury. Defendants, however, provide reasonable and logical explanations for these inconsistencies, to which plaintiff offers no response. Instead, plaintiff does no more than conjecture that these inconsistencies "should reasonably have brought into question [UC-55's] purported allegation of the involvement of the plaintiff in said purported transaction." Opp. Mem. at 15.

Plaintiff points out discrepancies in the reported color and type of bag the female was alleged to have handed to Mr. Hewitt—a clear plastic bag versus a black plastic bag—, but plaintiff fails to tie such imprecision—irrelevant, in any case, to the probable cause determination[9]—to a reasonable inference of outright fabrication.

---

[8] The Supreme Court recently held that plaintiffs may not use "evidence of [a grand jury] witness' testimony to support *any other § 1983 claim* concerning the *initiation or maintenance of a prosecution.*" Rehberg v. Paulk, 132 S.Ct. 1497, 1506 (2012) (emphasis added). It is unclear whether a Section 1983 claim arising out of an arrest, such as false arrest, excessive use of force, or illegal search and seizure, could be considered a claim "concerning the initiation . . . of a prosecution" under Rehberg. Id. Given this ambiguity, the Court will entertain grand jury testimony in support of plaintiff's false arrest claim.

[9] J.D. Altima's knowledge of the *quantity* of drugs she possessed and handed to Mr. Hewitt has no bearing on probable cause. N.Y. Penal L. § 15.20(4) (McKinney's 1995) ("[K]nowledge by the defendant of the aggregate weight of [a] controlled substance . . . is not an element of any [controlled substance] offense and

Plaintiff additionally draws the Court's attention to claimed "significant[]

differen[ces]" between the approximate height and weight provided by UC-55 and

plaintiff's deposition description of herself. Opp. Mem. at 16; compare 4/20/06 Buy

Report; with Pl. Dep. at 12. Relatedly, plaintiff points out that Mr. Hewitt had referred to

the female accomplice as his "girlfriend," as opposed to his sister. Plaintiff offers no

evidence, however, to rebut the logical explanation that UC-55's descriptions were mere

estimates based on observations of the female while seated, "through the front

windshield," from "the passenger side," or from the backseat of the car. UC-55 Dep. at

83. Moreover, UC-55's subsequent confirmatory photo identification was based solely

on plaintiff's face, not her body type. As to Mr. Hewitt's statement that the female

accomplice was his "girlfriend," neither UC-55, nor the other officers, were obliged to

believe what Mr. Hewitt said. Mr. Hewitt could have been lying to protect his sister or he

could have been shooting straight that the female really was his girlfriend. Police

officers, however, are "not required to explore and eliminate every theoretically plausible

claim of innocence before making an arrest." Martinez, 202 F.3d at 635 (internal

quotation omitted). In any case, the evidence—undisputed by plaintiff—demonstrates

that Cooke and others *did* investigate who J.D. Altima might be before arranging the

confirmatory photo array. Cooke Dep. at 54.

Lastly, plaintiff argues that the audio recordings of UC-55's undercover

operations on April 6 and 20, 2006 "belie [UC-55]'s purported version of events." The

Court has listened *in full* to the recordings provided, the majority of which either consist

of absolute silence, white noise, hip-hop tracks, or unintelligible conversations and

---

it is not . . . a defense to a prosecution therefor that the defendant *did not know the aggregate weight* of the controlled substance . . . .") (emphasis added).

laughter drowned out by echoes and other radiant neighborhood noise. Plaintiff offers no summaries or transcripts to assist the Court in deciphering the recordings. What little the Court could make out, however, seems to corroborate UC-55's version of events and if anything, reveal an undercover detective, successful in building rapport and trust among serious drug dealers, at work in dangerous and unpredictable conditions, scheduling, negotiating and carrying out large drug buys.

The Court, therefore, rejects plaintiff's submission that these foregoing proffered inconsistencies raise a genuine fact issue, let alone constitute "undisputed evidence" that defendants fabricated evidence. More likely, the inconsistencies constitute reasonable oversights to be expected in drug investigations of like scale and scope. Without raising any reasonable inference that defendants manufactured evidence against her, plaintiff's Fourth Amendment claim fails in the face of defendants' probable cause to arrest.

Plaintiff's claim for false arrest is dismissed in its entirety.

B. Malicious Prosecution

Plaintiff's malicious prosecution claim requires that she prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Manganiello, 612 F.3d at 161 (internal quotations and citations omitted). "[T]o prevail on a § 1983 claim against a state actor for malicious prosecution," however, "a plaintiff must [also] show a violation of his rights under the Fourth Amendment," Id. at 160-61, which

requires "that [a] seizure resulted from the initiation or pendency of judicial proceedings."[10] Murphy v. Lynn, 118 F.3d 938, 944 (2d Cir. 1997).

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." Savino, 331 F.3d at 72. "Unlike an arrest, which only requires probable cause that 'the suspect had committed *an* offense,'" however, "a prosecution requires probable cause 'to charge the suspect with *each* of the crimes.'" Kavazanjian v. Rice, No. 03-CV-1923 (FB)(SMG), 2005 WL 1377946, at *4 (E.D.N.Y. June 6, 2005) (Block, J.) (quoting Lowth, 82 F.3d at 569, 571) (internal modifications omitted) (emphasis in original).

The Court dismisses plaintiff's malicious prosecution claims against UC-54 and Dauge because plaintiff does not allege that these defendants were sufficiently involved in initiating her prosecution. Plaintiff neither alleged nor proffered any evidence to suggest that UC-54's involvement extended beyond one "ghost" observation and the reporting of that observation to Cooke. "'One who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceeding.'" Rohman v. New York City Trans. Auth., 215 F.3d 208, 217 (2d Cir. 2000) (quoting Present v. Avon Prods., Inc., 687 N.Y.S.2d 330, 335 (N.Y. App. Div. 1999)). Dauge's involvement as "Alternate Case Detective" was limited to collecting and providing—in at most, a supporting role to Cooke—information to the KCDA's office in "the investigation that led to the *arrest* of the plaintiff." Opp. Mem. at 9

---

[10] The Court dismisses plaintiff's claim for malicious prosecution against Childs for failure to set forth any proof that Childs' involvement extended beyond plaintiff's arrest. An arrest alone "cannot serve as the predicate deprivation of liberty" required under the Fourth Amendment as the arrest "occurred prior to [plaintiff's] arraignment and without a warrant, and therefore was not pursuant to legal process." Singer, 63 F.3d at 117 (internal quotation marks omitted).

(emphasis added). Dauge played no, let alone "an active role in the *prosecution*" of plaintiff. Rohman, 215 F.3d at 217.

Similar logic applies to bar plaintiff's malicious prosecution claim against UC-55. Although UC-55's investigation, including reports, identifications, and ongoing communication with Cooke, formed the principal basis for the *arrest* of plaintiff, "the chain of causation between a police officer's . . . arrest and a subsequent [prosecution] [wa]s broken by the intervening exercise of independent [prosecutorial] judgment," Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999).

UC-55 did testify before the grand jury, and his testimony led to plaintiff's indictment. As the Supreme Court recently made explicit, however, although "a detective or case agent who has performed or supervised most of the investigative work in a case may serve as an important witness in the grand jury proceeding and may very much want the grand jury to return an indictment[,] . . . such a witness . . . does not make the decision to press criminal charges." Rehberg v. Paulk, 132 S.Ct. 1497, 1508 (2012). Absent a sworn complaint or evidence—as already found—to raise the reasonable inference that UC-55 forwarded false or misleading information to the KCDA to influence their otherwise independent charging discretion, UC-55 did not initiate the prosecution against plaintiff.

The fact that plaintiff is barred from bringing a malicious prosecution claim against UC-55 does not mean that UC-55's conduct before the grand jury was exemplary. Testifying about the April 20, 2006 buy, UC-55 was neither asked by the DA nor independently offered the fact that the "drugs" he bought tested negative. See 10/25/07 Grand Jury Mins. at 71. Selling or possessing fake drugs is legal as long as the seller or

16

possessor is aware that the substance is fake. See People v. Acevedo, 596 N.Y.S.2d 618, 619 (N.Y. App. Div. 1993) (dismissing indictment where defendant sold fake cocaine and "[i]t was equally plausible that defendant intended to defraud the undercover officer."). At least in part as a result of UC-55's incomplete testimony, the grand jury returned indictments on Counts 147-149 for drug offenses tied to plaintiff's alleged involvement in the April 20, 2006 transaction. Def. Exh. J at NYC 184-85. But under Rehberg v. Paulk, "a grand jury witness has absolute immunity from any § 1983 claim *based on the witness' testimony*." 132 S.Ct. at 1506 (emphasis added). This case is distinguishable from Sankar v. City of New York, --- F.Supp.2d ----, 2012 WL 1116984 (E.D.N.Y. Mar. 30, 2012), in which this Court allowed a malicious prosecution action to proceed against an officer who both swore out a criminal complaint and testified before the grand jury. In Sankar, the defendant's grand jury testimony paralleled the information contained in his sworn complaint and provided to the prosecution; therefore, the Court found a genuine fact issue as to whether defendants lacked probable cause to prosecute. The Sankar defendant's liability for malicious prosecution was not "based on the witness' testimony," Rehberg, 132 S.Ct. at 1506, but on his other conduct "laying the groundwork for an indictment." Sankar v. City of New York, No. 07 CV 4726(RJD)(SMG), 2012 WL 2923236, at *3 (E.D.N.Y. July 18, 2012) (denying reconsideration). In contrast, because the Court has found that UC-55 was forthright in laying the groundwork for an indictment, any liability would be based solely on his less-than-forthright grand jury testimony, for which he enjoys absolute immunity. Rehberg, 132 S.Ct. at 1506.

As lead detective on the case, however, Cooke laid the groundwork for plaintiff's prosecution *and* swore out the criminal complaint. See Rounseville v. Zahl, 13 F.3d 625,

628 (2d Cir. 1994) (swearing out accusatory instrument constitutes initiation of criminal prosecution). Cooke's liability for malicious prosecution, however, extends only as far as his personal involvement in prosecuting plaintiff—filing his sworn complaint. Cooke did not testify before the grand jury *against plaintiff*, and plaintiff did not rebut the presumption that the KCDA independently decided to prosecute her for offenses additional to those charged in Cooke's sworn complaint. Felmine v. City of New York, No. 09-CV-3768 (CBA)(JO), 2011 WL 4543268, at *11 (E.D.N.Y. Sept. 29, 2011) (Amon, C.J.) ("'[A] malicious-prosecution claim cannot stand if the decision made by the prosecutor to bring criminal charges was independent of any pressure exerted by [the] police.'") (quoting Hartman v. Moore, 547 U.S. 250, 263 (2006)) (modifications in original).

Cooke's sworn complaint charged plaintiff with three drug related offenses based upon the April 6, 2006 buy—Criminal Sale of a Controlled Substance in the Second and Third Degrees and Criminal Possession of a Controlled Substance in the Third Degree. Based on UC-55's observations, there was ample probable cause to arrest plaintiff for each of these offenses. See supra Part II.A. Where, as here, "probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined by the discovery of some intervening fact." Johnson v. Constantellis, 221 F. App'x. 48, 50 (2d Cir. 2007) (internal quotation marks omitted). The only "intervening fact" discovered in this case—UC-55's additional identification of plaintiff in the stationhouse the day after his arrest—bolsters rather than "undermine[s]" probable cause. Id.

Cooke's sworn complaint also charged plaintiff with Conspiracy in the First Degree. Under N.Y. Penal Law § 105.17 (McKinney's 1978), "[a] person is guilty of

18

conspiracy in the first degree when, with intent that conduct constituting a class A felony be performed, he, being over eighteen years of age, agrees with one or more persons under sixteen years of age to engage in or cause the performance of such conduct." Id. Here, UC-55's observations of J.D. Altima involved in drug buys on both April 6, 2006 and April 20, 2006 under like circumstances raise the strong inference of an illicit agreement. See, e.g., United States v. Diez, 736 F.2d 840, 843 (2d Cir. 1984) (affirming conspiracy charges based on inference of agreement raised by defendant's presence in car during drug deal and fact that defendant "actually witnessed the transaction"); cf. Nusraty, 867 F.2d at 764 (finding evidence insufficient to support drug conspiracy conviction where there was no "*pattern or acts . . .* reflecting the defendant's participation in a criminal scheme" or "evidence to show that [defendant] *ever took possession*, either actual or constructive, of the heroin.") (emphasis added).

Plaintiff's argument that "there is absolutely no evidence that the plaintiff had ever entered into an agreement to sell narcotics with juveniles," Opp. Mem. at 15 (emphasis in original), is without legal significance. New York courts have recently clarified that the illicit agreement need not have been made directly between one conspirator and an individual under the age of 16 to satisfy the elements for Conspiracy in the First Degree. Indeed, "a conspirator is guilty of the First Degree offense if he not only is unaware of the age of the young conspirator, but does not even know of that individual's existence." People v. Canales, 934 N.Y.S.2d 36 (Table), 2011 WL 2652566, at *4 (N.Y. Sup. Ct. 2011) (Table); accord People v. Ackies, 914 N.Y.S.2d 211, 216 (N.Y. App. Div. 2010) (reversing dismissal of First Degree Conspiracy counts and observing that "[p]roof of a defendant's knowledge of the identities and specific acts of

19

all his coconspirators is not necessary where the circumstantial evidence establishes the defendant's knowledge that he is part of a criminal venture which extends beyond his individual participation.").[11]

"Once an illicit agreement is shown, the overt act of any conspirator may be attributed to other conspirators to establish the offense of conspiracy and that act may be the object crime." People v. McGee, 49 N.Y.2d 48, 57 (N.Y. 1979) (internal citations omitted). The commission of Criminal Sale in the Second Degree on April 6, 2006 was sufficient to meet both the "overt act" and "conduct constituting a class A Felony" elements of the First Degree Conspiracy offense.[12]

Because Cooke had probable cause to prosecute plaintiff for the crimes charged in his sworn complaint, plaintiff's malicious prosecution claims against him are dismissed.

C. Unlawful Strip Searches

Plaintiff claims that she was illegally strip searched, Opp. Mem. at 2-3, but fails to allege or provide any admissible evidence that any one of the named defendants were personally involved in strip searching plaintiff. See Opp. Mem. at 23. Accordingly, summary judgment is granted on this claim for failure to show personal involvement.

D. Right to a Fair Trial

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's

---

[11] Given this recent clarification and the continued unsettled nature of the issue—Canales is a Table decision issued by a New York Superior Court—Cooke would be protected by qualified immunity as the required elements for Conspiracy in the First degree in New York was not "clearly established" at the time of Cooke's charging decision. See Camreta v. Greene, 131 S.Ct. 2020, 2031 (2011) ("If prior case law has not clearly settled the right, and so given officials fair notice of it, the court can simply dismiss the claim for money damages.").

[12] See N.Y. Penal L. §220.41(1) (McKinney's 1973) (classifying criminal sale of a controlled substance in the second degree as a "class A-II felony").

constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressible in an action for damages under [Section] 1983." Ricciuti v. New York City Trans. Auth., 124 F.3d 123, 130 (2d Cir. 1997). This claim, however, is duplicative of both plaintiff's false arrest and malicious prosecution claims because the Court has already found no genuine fact issue that defendants fabricated any evidence that was then "forward[ed] . . . to prosecutors." Id. Summary judgment is, therefore, granted.

E. Failure to Intervene[13]

"A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988). Because the Court has already ruled, however, that plaintiff has failed to raise a genuine issue of material fact that her "constitutional rights" were "violated" by any officers under any theory, summary judgment must be granted as to this claim.

F. Municipal Liability

"[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of East Haven, --- F.3d ----, 2012 WL 3104523, *6 (2d Cir. Aug. 1, 2012) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978)). Again, however, because plaintiff has failed to raise a genuine issue of material fact that she suffered a "deprivation of [her] . . . rights under federal law," plaintiff's claim must fail. Id. Even if plaintiff were able to raise a genuine issue that her

---

[13] On February 7, 2011, Magistrate Judge Go denied as "futile" plaintiff's motion to amend her complaint to add a failure to intervene claim against Childs. ECF Docket # 37, 2/7/11 Order at 3. Accordingly, discussion of this claim only addresses the liability of the remaining defendants.

21

constitutional rights were violated when UC-55 failed to testify before the grand jury about the negative field test—irrespective of his personal immunity to suit based upon such testimony—"[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Okla. City v. Tuttle, 471 U.S. 808, 823-24 (1985). Plaintiff has set forth no proof—instead relying on conclusory allegations—to raise a genuine issue of such an "existing, unconstitutional municipal policy."[14] Id.

### III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
       September 27, 2012

/s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge

---

[14] To the extent that plaintiff's municipal policy claim is now solely based on the "District Attorney['s] fail[ure] to train and supervise ADA's [sic] regarding their legal obligations," Opp. Mem. at 29, on February 7, 2011, Magistrate Judge Go denied as "futile" plaintiff's motion to amend her complaint to add such complaints. See 2/7/11 Order at 6-10.